# Opening Brief

# Exhibit 1

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368406 (D.Del.)
**(Cite as: 2001 WL 34368406 (D.Del.))**
<KeyCite History>

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Steven Gregory JOHNSON, Plaintiff,
v.
Eric CAMPBELL, et al., Defendants.
No. Civ.A. 00-510-JJF.

March 30, 2001.

Victor F. Battaglia and Philip B. Bartoshesky, of Biggs and Battaglia, Wilmington, Delaware, for Plaintiff.

Dawn R. Courtney and Norman H. Brooks, of Marks, O'Neill, O'Brien & Courtney, P.C., Wilmington, Delaware, for Defendants Campbell and Town of Dewey Beach.

Carol J. Antoff and Louis J. Rizzo, Jr., of Reger & Rizzo, Wilmington, Delaware, for Defendants Ocean Breeze, LLC and Price.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court is a Motion for Summary Judgment (D.I.55) filed by Defendants Ocean Breeze, LLC and Christine Price ("Defendants"). For the reasons stated below, the Court will deny Defendants' Motion for Summary Judgment (D.I.55).

BACKGROUND

Plaintiff Steven Gregory Johnson ("Plaintiff") filed this action on May 22, 2000, seeking compensatory and punitive damages against: Defendant Ocean Breeze, LLC, which operates a motel in Dewey Beach, Delaware, known as Sea Esta III; against Christine Price, an employee and agent of Ocean Breeze, LLC (collectively "the Ocean Breeze Defendants"); against the Township of Dewey Beach, Delaware; and against a police officer employed by Dewey Beach, Erik Campbell (collectively "the Dewey Beach Defendants").

Claims against the Ocean Breeze Defendants are premised upon 42 U.S.C. § 1981 and § 2000a and assert that Ocean Breeze Defendants impaired Plaintiff's ability to enjoy the benefits of a contractual relationship between Plaintiff and the motel. Plaintiff also asserts a state law defamation claim against Defendant Price.

Plaintiff, who is a 43 year old black male, has been employed as a teacher and student advisor at William Penn High School since 1995. From 1995 until this year, Plaintiff was the Head Coach of the William Penn Boys Varsity Basketball Program. (D.I.65, B-19).

The incident that is the subject matter of this lawsuit took place over the Christmas/New Year holiday in 1999. The William Penn Basketball team was a participant in the annual Slam Dunk to the Beach Tournament in Dewey Beach, Delaware. William Penn was scheduled to play on December 28 and December 30, 1999. (D.I.65, B-21). Arrangements were made by the Tournament's sponsors to have the William Penn team stay at the Sea Esta III Motel in Dewey Beach. (D.I.65, B-20). The motel is owned and operated by Defendant Ocean Breeze, LLC. (D.I.57, Exh. B).

The team arrived at the Sea Esta III Motel on the evening of December 27th and checked into the motel. (D.I.65, B-23). The team played a game on December 28th and returned home to the Wilmington area after the game. Plaintiff gave the motel their travel arrangements and schedule. (D.I.65, B-24-26). The team returned on the evening of December 29, 1999.

After giving the team some brief instructions, Plaintiff then walked to a gas station for a cup of coffee and returned to the motel office lobby. (D.I.65, B-27-30, B-46-48). Defendant Christine Price ("Price") was working as the desk clerk at the motel that night. (D.I. 57, Exh. D, at 14). Price is a retired State Police Officer. (D.I.65, B-112). Plaintiff indicated to Price that he was a motel guest. (D.I.65, B-122, 124-125). Defendants contend that

Plaintiff did not identify himself as a motel guest. (D.I. 57, Exh. I, at 49). There was a brief exchange of pleasantries and both Plaintiff and Defendant, for a short time, watched a television show. Although Plaintiff spoke sparingly, Price acknowledged that Plaintiff was polite and courteous. (D.I.65, B-124-125). After finishing his coffee, Plaintiff picked up one of the free newspapers that was in the office lobby and left the office.

*2 According to Plaintiff, he did not want to go up to his room yet, so he went and sat in the team van to read the newspaper. (D.I.65, B-31-32, B-60-63). After a few minutes, Plaintiff was joined in the school van by Assistant Coach Abblitt and they discussed team related matters. (D.I.65, B-73-76).

Just after Plaintiff left, Price telephoned her husband and asked him to call the Dewey Beach Police Department and request that Sergeant Berry walk around the Sea Esta III Motel premises. (D.I. 57, Exh. E, at 42). Price claims that she did that because Plaintiff's behavior made her nervous. (D.I.65, B-127, 131).

Earlier in 1999, Price had been robbed while working the desk at the Sea Esta III Motel. (D.I. 57, Exh. E, at 36). In this robbery, a man entered the office, engaged Price in a short conversation then left the office at which time another man entered, the first man returned and the two robbed her. (D.I. 57, Exh. E, at 37-39).

After the call from Price's husband, Sgt. George Berry and Defendant Campbell of the Dewey Beach Police responded to the suspicious person complaint. Price repeated to Sgt. Berry what she had told her husband. Sgt. Berry told Officer Campbell why Price said she thought Plaintiff was suspicious. (D.I.65, B-98, B-132, 133). Price did not tell the officers that Plaintiff was a motel guest and Officer Campbell concluded that he was not a motel guest. (D.I.65, B-89-92, 99). Due to Price's statements to the police, Officer Campbell considered Plaintiff to be a trespasser on the motel's grounds. (D.I.65, B-109-110).

Sgt. Berry and Officer Campbell then went looking for the person Price described. Officer Campbell saw Plaintiff sitting in the school van and approached the van. Campbell told Plaintiff that he was being detained and demanded identification. (D.I.65, B-100-101). Plaintiff initially disputed Officer Campbell's right to demand identification and asked why he was being questioned. Eventually, Officer Campbell told Plaintiff that Price had reported "suspiciousness" about Plaintiff. (D.I.65, B-103).

During this exchange, Mr. Abblitt, who is white, left the passenger side of the van and approached Officer Campbell. Mr. Abblitt told Officer Campbell that they were basketball coaches registered at the motel. According to Plaintiff, Officer Campbell completely ignored Abblitt and would not speak to him. (D.I.65, B-44, B-80-83).

Plaintiff gave Officer Campbell his Delaware driver's license and the officer attempted to make some verification of the license over his radio. At this point, Plaintiff used profanity toward Officer Campbell. Officer Campbell then placed Plaintiff under arrest for disorderly conduct in using profane language in public. (D.I.65, B-42-43).

At some point after Officer Campbell approached the school van, a number of the William Penn team members came out from their rooms and witnessed much of the incident. Team members saw their coach arrested, handcuffed and led to the police station. (D.I.65, B-53, 84-85). Though told by team members, whom Price knew were guests, that their coach had been arrested, Price did not contact the Dewey Beach Police to inform them that Plaintiff was a motel guest. (D.I.65, B-138).

*3 Plaintiff was taken to the Dewey Beach Police Station across the street, but he was not charged with any offense and was released in less than an hour by Sgt. Berry. (D.I.65, B-93-94).

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be granted if the Court determines "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, " 'courts are to resolve any doubts as to the existence of genuine issues of fact against the moving parties." ' *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981) (citations omitted). Furthermore, any reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Spain v. Gallegos,* 26 F.3d 439, 446 (3d Cir.1994) (citing *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.,* 998 F.2d 1224, 1230 (3d Cir.1993)). Moreover, the Court of Appeals for the Third

Circuit has instructed that the summary judgment standard is to be applied in an even more stringent fashion where the movant bears the burden of proof on the issue being considered. *National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1582 (3d Cir.1992).

## DISCUSSION
I. Plaintiff's Claim Under 42 U.S.C. § 1981.

Section 1981 claims are analyzed under the burden-shifting framework developed in Title VII cases including *McDonnell Douglas Corp v. Green,* 411 U.S. 792 (1973), and *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993). Accordingly, Plaintiff must first establish a prima facie case of discrimination by demonstrating that:(1) Plaintiff is a member of a racial minority; (2) Defendants intended to discriminate against Plaintiff on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in Section 1981. *Lewis v. J.C. Penney Co.,* 948 F.Supp. 367, 371 (D.Del.1996). Upon a prima facie showing by Plaintiff, the burden shifts to Defendants to assert a "legitimate, nondiscriminatory" reason for their actions, which Plaintiff may rebut with evidence of pretext. *See McDonnell Douglas,* 411 U.S. at 802.

In support of their Motion for Summary Judgment, Defendants contend that Plaintiff fails to establish his prima facie case. Defendants concede that Plaintiff is a member of a racial minority. Defendants, however, contend that Plaintiff fails to show: (1) an intent to discriminate on the basis of race and (2) that Plaintiff suffered discrimination concerning one of the activities enumerated in Section 1981.

A. *Intent to Discriminate*

Defendants assert that Plaintiff has alleged no specific facts which suggest an intent to discriminate on the basis of race.

Upon viewing the evidence in a light most favorable to Plaintiff, the Court concludes that Plaintiff has offered sufficient evidence to support an inference of intentional discrimination on the part of Defendants. There is evidence in the record that Defendant Price caused the Dewey Beach Police to investigate Plaintiff. The description of Plaintiff given to the police by Price focused partly on the fact that Plaintiff is a black male. Thus, by Defendant Price's own description, Plaintiff's race played a part in her decision to have him investigated. Thus, the Court concludes that Plaintiff has made a prima facie showing of intentional discrimination.

B. *Whether the Discrimination Concerned an Activity Enumerated in Section 1981.*

**\*4** Defendants also contend that Plaintiff has not established that the discrimination concerned one or more of the activities enumerated in Section 1981.

Section 1981 prohibits race-based discrimination in the making and enforcement of contracts. 42 U.S.C. § 1981(a). Section 1981, as amended by the Civil Rights Act of 1991, provides that:
> [A]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> *Id.* The coverage of the statute "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). These rights are protected from encroachment by both private and state actors. *See* 42 U.S.C. § 1981(c).

For purposes of this motion, Defendants do not dispute the allegation that Plaintiff had a contractual relationship with Defendant Ocean Breeze, LLC, in that Ocean Breeze, LLC did agree to provide Sea Esta III motel rooms to participants in the Slam Dunk to the Beach Tournament, i.e., Plaintiff was a third-party beneficiary to the contract between Defendant Ocean Breeze, LLC and the organizers of the Slam Dunk to the Beach Tournament. Instead, Defendants contend that Plaintiff's contractual rights were not adversely affected by Defendants.

In this case, Plaintiff and his team were actually guests of the motel and used the rooms on the night of December 27, 1999. They then returned to their homes in New Castle County where they spent the night of December 28, 1999. On December 29, 1999, they returned to the same motel rooms. The contractual relationship did not change in the interim. Thus, the Court concludes that Plaintiff was entitled to enjoy the benefits of the contractual relationship between Ocean Breeze, LLC and the organizers of the basketball tournament. There is

evidence in the record that Plaintiff's benefits under this contract were interfered with when he was stopped, investigated and arrested by police. It is undisputed that Defendant Price caused the Dewey Beach Police to investigate Plaintiff. Upon viewing the evidence in a light most favorable to Plaintiff, the Court finds that the discrimination concerned an activity enumerated in Section 1981, namely, the making and enforcement of a contract. Therefore, the Court concludes that Plaintiff has established a prima facie case under Section 1981.

Once Plaintiff has established a prima facie case, the burden shifts to Defendants "to articulate some legitimate nondiscriminatory reason" for their actions. *McDonnell Douglas,* 411 U.S. at 802. If Defendant carries this burden, the presumption of discrimination drops from the case, and Plaintiff must "cast sufficient doubt" upon the proffered reasons with evidence of pretext. *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1072 (3d Cir.1996).

*5 Although Defendants' Memorandum of Law in Support of their Motion for Summary Judgment (D.I.56) does not follow the burden-shifting framework, it appears to the Court that Defendants have cited "legitimate" reasons for their actions. Defendants contend that the reason the police were called in was due to Plaintiff's behavior in the motel lobby, not his color or his race. (D.I. 57, Exh. E, at 26, 28, 33, 36-37, 42). Plaintiff has countered with testimony that his behavior provided no justification for calling in the police. (D .I. 65, B-66-67). Thus, Plaintiff has offered evidence that Defendants' legitimate reasons are merely a pretext. Courts have concluded that "[t]he ultimate determination of 'whether there was intentional discrimination against a protected class is considered a question of fact." ' *Hampton v. Dillard Department Stores, Inc.,* 18 F.Supp.2d 1256, 1265 (D. Kansas 1998) (quoting *EEOC v. Flasher,* 986 F/2d 1312, 1317 (10th Cir.1992)). Upon viewing the viewing the evidence in a light most favorable to Plaintiff, the Court concludes that a genuine issue of material facts exists as to whether Defendants intended to discriminate against Plaintiff on the basis of race in violation of Section 1981. Therefore, Defendants' Motion for Summary Judgment on Plaintiff's Section 1981 claim will be denied.

II. Plaintiff's Claim Under 42 U.S.C. § 2000a.

Defendants move for summary judgment on Plaintiff's claim under 42 U.S.C. § 2000a. Plaintiff concedes, however, that after discovery, it appears that Plaintiff does not have a claim for injunctive relief, which is the sole remedy under Section 2000a. Therefore, Defendants' Motion for Summary Judgment on Plaintiff's Section 2000a claim will be denied as moot.

III. Plaintiff's Claim for Defamation.

Defendant Price moves for summary judgment on Plaintiff's claim for defamation.

Under Delaware law, "[d]efamation consists of the twin torts of libel and slander; in the shortest terms, libel is written defamation, and slander is oral defamation." *Spence v. Funk,* 396 A.2d 967, 970 (Del.1978). To establish a claim for slander, a plaintiff must prove: (1) a defamatory statement of fact that is false; (2) publication to a third party; and (3) special damages except in the case of slander per se. *See id.* There are four categories of defamation, commonly called slander per se, which are actionable without proof of special damages. *Id.* In broad terms, these are statements which: (1) malign one in a trade, business or profession; (2) impute a crime; (3) imply that one has a loathsome disease; or (4) impute unchastity to a woman. *Id.*

Plaintiff asserts that Defendant Price made false statements that imputed a crime to him. Plaintiff offers evidence that Defendant Price made statements that Plaintiff was a trespasser on the motel's property and that Plaintiff was acting in a suspicious manner. (D.I.65, B-96, 97, 101, 109). Price did not tell the officers that Plaintiff was a motel guest and Officer Campbell concluded that he was not a motel guest. (D.I.65, B-89-92, 99). Defendant Campbell understood Defendant Price's statements as indicating Plaintiff committed the crime of trespass. (D.I. 65, at B-109-110). According to the *Restatement (Second) of Torts,* "[i]t is not necessary that the charge be made in technical language. It is enough that the language used imputes to the other a criminal offense." *Restatement (Second) of Torts,* § 571, comment (c). Defendant Price contends that her statements were truthful and that she merely told her husband and police that Plaintiff's behavior was making her nervous. (D.I. 57, Exh. E, at 34-35, 44).

*6 Viewing the evidence in a light most favorable to Plaintiff, the Court concludes that disputed issues of material fact exist as to whether the statements made

by Defendant Price imputed a crime to Plaintiff, i.e., whether those statements are actionable as slander per se. Therefore, Defendants' Motion for Summary Judgment on Plaintiff's claim for defamation will be denied.

## CONCLUSION

For the reasons discussed, Defendants' Motion for Summary Judgment (D.I.55) will be denied.

An appropriate Order will be entered.

Not Reported in F.Supp.2d, 2001 WL 34368406 (D.Del.)

Motions, Pleadings and Filings (Back to top)

. 1:00CV00510 (Docket) (May. 22, 2000)

END OF DOCUMENT

**Opening Brief**                                        **Exhibit 2**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 196577 (D.Del.)
**(Cite as: 2005 WL 196577 (D.Del.))**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Godwin J. IGWE, Plaintiff,
v.
E.I. DU PONT DE NEMOURS AND CO., INC.,
Defendant.
No. Civ.A. 03-839 JJF.

Jan. 26, 2005.

Darryl K. Fountain, Wilmington, Delaware, for Plaintiff.

Wendy K. Voss, and Suzanne M. Hill, of Potter Anderson & Corroon LLP, Wilmington, Delaware. Evelyn H. Brantley, of E.I. Du Pont De Nemours and Company, Wilmington, Delaware. for Defendant.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court is Defendant E.I. DuPont de Nemours & Company Incorporated's ("DuPont") Motion for Summary Judgment (D.I.23). For the reasons discussed, the Court will grant DuPont's motion.

BACKGROUND
Plaintiff Godwin J. Igwe, an African-American male of Nigerian descent, began his work with DuPont as a Senior Research Engineer in March of 1992. In January of 1998, DuPont eliminated Mr. Igwe's position and transferred him to its Corporate Information Science Group ("CIS"). There, Mr. Igwe became a Senior Information Scientist, a job which required him to learn new skills, but kept him at the same salary level.

At CIS, Mr. Igwe reported to Marsha Lee, who eventually became dissatisfied with Mr. Igwe's work performance. In September of 1999, Ms. Lee expressed to Mr. Igwe her disappointment and placed him on Written Corrective Action. Ms. Lee's dissatisfaction continued and on March 3, 2002, she placed Mr. Igwe on probation. Mr. Igwe was informed that the probationary period would extend for up to twelve months, and that he would be terminated if, during that time, he failed to demonstrate improvement. A few days later, on March 7, 2002, Mr. Igwe injured his neck in DuPont's library and left work on disability leave. Mr. Igwe was eventually approved for permanent disability status and, in October of 2002, DuPont terminated his employment. DuPont continues to pay Mr. Igwe disability compensation and provide him benefits programs.

On August 26, 2003, Mr. Igwe filed his Complaint against DuPont (D.I.1). On March 3, 2004, Plaintiff filed his Amended Complaint (D.I. 3, 4). The Amended Complaint states four causes of action. Count I alleges discrimination on the basis of race and national origin in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Count II alleges retaliatory demotion in violation of Title VII. Count III alleges violation of the Thirteenth Amendment. Count IV alleges defamation in violation of Delaware state law.

STANDARD OF REVIEW
Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

To defeat a motion for summary judgment, Rule 56(c) requires the non-moving party to show that there is more than "some metaphysical doubt as to the material facts.... In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial." ' *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(c)). However, the mere existence of *some evidence in* support of the nonmovant will not be sufficient to

support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted. *Id.*

### DISCUSSION
A. Claim One: Employment Discrimination

*2 In Title VII employment discrimination actions, courts apply the *McDonnell Douglas* burden shifting analysis. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under *McDonnell Douglas,* a plaintiff has the initial burden to establish a prima facie case of discrimination. *Id.* at 802. Once a plaintiff succeeds in establishing his or her prima facie case, the burden shifts to the defendant employer to proffer some legitimate non-discriminatory rationale for his or her action. *Id.* If the employer provides the court with a non-discriminatory rationale for his or her employment decision, the burden again shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *Id.* at 804.

The Third Circuit has recognized that the elements of the prima facie case will vary from case to case because of differing fact scenarios. *Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 352 (3d Cir.1999) (citing *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. 1817). In the instant action, to establish his prima facie case of discrimination, Mr. Igwe must provide evidence that (1) he is a member of a protected class; (2) he is qualified for the sought after position; (3) he suffered adverse employment action; and (4) similarly situated non-members of the protected class were treated more favorably than he, or the circumstances of his termination give rise to an inference of race discrimination. *Pivirotto,* 191 F.3d at 356.

*1. Member of a Protected Class*

It is not disputed that Plaintiff, an African-American male of Nigerian descent, is a member of a protected class.

*2. Qualified*

Mr. Igwe contends that he was qualified for a promotion, a transfer, and a bonus or raise. He contends he was qualified for a promotion because (1) he worked at DuPont for over ten years and received "glowing evaluations and award nominations" (D.I. 28, Ex. 1, at 1) and (2) DuPont promotion guidelines required that he receive a raise. Mr. Igwe contends he was qualified for a transfer because "[h]e applied for more than a dozen other postings in the company...." *Id.*

In response, DuPont contends that Mr. Igwe's only evidence in support of his right to a promotion are two documents which do not apply to his job classification. Further, DuPont contends that Mr. Igwe fails to allege specific facts to support his arguments for a transfer, bonus, or raise.

The Court concludes that Mr. Igwe has failed to set forth specific facts showing he was qualified for the sought after positions. Mr. Igwe's contentions consist almost entirely of unsupported, conclusory arguments. Mr. Igwe fails to identify any specific, available opportunities for a promotion, transfer, bonus, or raise. Mr. Igwe's only specific facts are two documents outlining promotion guidelines for research and development professionals. (D.I. 26 at A518-19.) Mr. Igwe, however, was a CIS employee, not a research and development professional, and thus the promotion guidelines were inapplicable. For these reasons, the Court concludes that Mr. Igwe has not met his burden and thus does not present a genuine issue for trial with respect to the second prong of the prima facie case.

*3. Adverse Employment Action*

*3 Mr. Igwe contends that he was subject to three types of adverse actions: (1) denial of a promotion, transfer, bonus, or raise; (2) disciplinary probation for up to twelve months (D.I. 26 at A509-12); and (3) his original transfer to CSI, which he contends limited his abilities. (D.I. 28, Ex. 2, at 2 ¶ 7). In response, DuPont contends that these actions did not cause a significant change in Mr. Igwe's employment status.

The United States Supreme Court has defined an adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change of benefits." *Burlington Indus. Inc. V. Ellerth,* 524 U.S. 742, 761 (1998). In this case, the Court concludes that Mr. Igwe has failed in his burden to establish an adverse employment action. As noted previously, Plaintiff has failed to set

forth specific facts regarding a promotion, transfer, bonus, or raise. Further, the Court finds that Mr. Igwe has not alleged specific facts to support a finding that Plaintiff experienced a significant change in his benefits. Mr. Igwe asserts he was placed on disciplinary probation, but does not offer evidence to show how this action significantly changed his benefits. Further, it appears that, despite being on probation, Mr. Igwe enjoyed the same compensation, benefits, and core job duties that he had as a Senior Research Engineer. (D.I. 26 at A380, A560, A572).

Likewise, Mr. Igwe does not specify how his transfer to CIS significantly changed his benefits. Instead, Mr. Igwe states in a conclusory fashion that "a limitation was placed on my ability, talent, professionalism, and my accomplishments dismissed. It was like a nurse being transferred to a nurse aid assignment ... (D.I. 28, Ex. 2, at 2 ¶ 7). Such unsupported assertions do not constitute "specific facts" as required by Rule 56(e).

*4. Discrimination*

Mr. Igwe contends that similarly situated non-members of his class were treated more favorably. He further contends that the circumstances surrounding DuPont's conduct towards him raise an inference of racial discrimination. In response, DuPont contends that Mr. Igwe has failed to support his contentions with specific facts.

The Court finds that Plaintiff has failed to set forth specific facts sufficient to support the fourth element of the *McDonnell Douglas* prima facie test. Mr. Igwe does not identify a person or group of persons that were similarly situated to him but more favorably treated. Further, Mr. Igwe does not allege circumstances raising an inference of racial discrimation. Instead, Mr. Igwe asks the Court to assume that, because he was Nigerian and allegedly maltreated, he was a victim of race discrimination. Rule 56(e), however, requires "specific facts showing that there is a genuine issue for trial." Mr. Igwe has set forth no such facts and thus has failed to meet the fourth element of the prima facie test.

\*4 In sum, because Mr. Igwe has not demonstrated that a genuine issue of material fact exists for elements two, three, and four of the *McDonnell Douglas* prima facie case, the Court will grant DuPont's motion on Mr. Igwe's racial and national origin discrimination claim.

B. Claim Two: Retaliatory Demotion

Mr. Igwe contends that DuPont subjected him to a retaliatory demotion in violation of 42 U.S.C. § 1981 by (1) incorrectly identifying him as an Information Scientist, rather than a Senior Information Scientist, on DuPont's website and (2) transferring him to CIS.

To establish a claim for retaliatory demotion, a plaintiff must first prove a prima facie case of retaliation by demonstrating that (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) there is a causal link between the protected activiety and the adverse employment action. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 800 (3d Cir.2003).

The Court finds that Plaintiff has failed to establish that he was engaged in a protected activity. Further, as the Court discussed previously, Mr. Igwe's arguments in support of a finding of an adverse employment action are not supported by specific facts. Because Mr. Igwe has not established a protected activity or an adverse action, Mr. Igwe has failed to demonstrate a causal link between the two. For these reasons, the Court will grant DuPont's motion on Mr. Igwe's retaliatory demotion claim.

C. Claim Three: Thirteenth Amendment

By his Complaint, Plaintiff contends that DuPont violated his "rights and privileges as guaranteed by the Thirteenth Amendment to the United States Constitution." (D.I. 3 ¶ 43.)

The Thirteenth Amendment prohibits slavery and involuntary servitude. The Court finds that Mr. Igwe has failed to demonstrate with specific facts his allegation that DuPont violated the Thirteenth Amendment. For this reason, the Court will grant DuPont's motion on Mr. Igwe's Thirteenth Amendment claim.

D. Claim Four: Defamation or Libel

In support of his claim for libel, Mr. Igwe claims that DuPont's website "intentionally publicly designated [Mr. Igwe] as an Information Scientist instead of Senior Information Scientist." (D.I. 28, Ex. 1, at 6-7.) Mr. Igwe contends that the inaccurate designation "humiliated him" and "damaged his reputation and standing, causing him to be denied projects for Senior Information Scientist[s]." (D.I.

28, Ex. 1, at 7.)

It is undisputed that Delaware law controls this libel claim. Delaware defines libel as "a false and defamatory statement of fact concerning the plaintiff made in an unprivileged publication to a third party." *Ramunno v. Cawley,* 705 A.2d 1029, 1035 (Del.1998) (citing *Spence v. Funk,* 396 A.2d 967, 969 (Del.1978)). To be defamatory, a statement must "tend[ ] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Ramunno,* 705 A.2d at 1035.

**\*5** The Court finds that Plaintiff has not demonstrated sufficient evidence regarding how his designation on the DuPont website as an "Information Scientist" lowered him in the estimation of the community or deterred people from associating with him. Mr. Igwe alleges in a conclusory fashion that the inaccurate designation "humiliated him" and "damaged his reputation and standing ..." (D.I. 28, Ex. 1, at 7.) Further, while Mr. Igwe contends that the misrepresentation caused him to be denied projects, he has not cited any specific projects which he was denied. For these reasons, the Court concludes that Summary Judgment on the issue of defamation and libel is appropriate.

## CONCLUSION

For the reasons discussed, the Court will grant Defendant's Motion For Summary Judgment (D.I.23) in all respects.

An appropriate Order will be entered.

Not Reported in F.Supp.2d, 2005 WL 196577 (D.Del.)

Motions, Pleadings and Filings (Back to top)

. 1:03CV00839 (Docket) (Aug. 27, 2003)

END OF DOCUMENT

**Opening Brief**                                                              **Exhibit 3**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 39872 (E.D.Pa.)
**(Cite as: 1990 WL 39872 (E.D.Pa.))**
<KeyCite Citations>

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Robert C. FISHER and Daisy F. Fisher, Co-Administrators of the Estate of Cheryl Fisher, *et al.*
v.
CITY OF READING, Ronald Steffy, Alphonso J. Powers, and Donald W. Morrison, Ph.D.
CIV. A. No. 89-8148.

April 2, 1990.
James R. Radmore, Philadelphia, Pa., for plaintiffs.

Hugh J. Hutchinson, Philadelphia, Pa., for City of Reading & Rodney Steffy.

Jeffrey R. Lerman and Stephen G. Rhoads, Philadelphia, Pa., for Donald W. Morrison Ph.D.

*MEMORANDUM*

CAHN, District Judge.

*1 This is a civil rights action arising from the shooting of several individuals by an off-duty police officer. Before the court is the motion of defendant Donald W. Morrison, Ph.D. to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the motion will be granted.

BACKGROUND
On November 26, 1987, defendant Alphonso J. Powers, a Reading police officer, shot and killed Cheryl A. Fisher and wounded Heather Geunes. Fisher's survivors and Geunes have brought this action against Powers, the City of Reading, Rodney Steffey, the Chief of Police for the City of Reading, and Donald W. Morrison, Ph.D., a psychologist.

The plaintiffs claim that the City of Reading, Steffey, and Morrison share with Powers responsibility for the shooting incident. According to the allegations in the complaint, the City of Reading continued to employ Powers as a police officer, and failed to prosecute or discipline him, despite his repeated and explicit threats against Fisher's life. Complaint, ¶ 18. The plaintiffs allege that Reading police officers responded many times to complaints of domestic violence against Fisher by Powers, but refused to take any action against him. Complaint, ¶ 19. In addition, the plaintiffs allege that, before the shooting incident, Dr. Morrison interviewed and evaluated Powers and certified his fitness for patrol duty.

Against Morrison, the plaintiffs assert claims under 42 U.S.C. § 1983 and the Fourth, Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States. They also bring a pendent state claim for negligence, as well as derivative wrongful death and survival actions. Federal subject matter jurisdiction is premised on the presence of a federal question, 28 U.S.C. § 1331, the civil rights statute, 42 U.S.C. § 1343, and the federal court's pendent jurisdiction.

The factual basis for these claims, alleged in Count Two, is that Morrison knew or should have known of the danger posed to Powers by Fisher, and failed to warn her. The complaint states that Morrison's actions amounted to gross negligence and deliberate indifference. [FN1]

DISCUSSION
Before a federal court can dismiss a complaint pursuant to Fed.R.Civ.P. 12(b)(6), it must determine that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). In making this determination, the court must treat all well-pleaded allegations of the complaint as true, and construe the complaint in the light most favorable to the plaintiff. *Colburn v. Upper Darby Township,* 838 F.2d 663, 665-66 (3d Cir.1988).

Since jurisdiction here is premised on the presence of federal claims, I cannot consider the state claims against Morrison unless there is a viable federal claim before me. [FN2] Therefore, I must determine whether the plaintiffs' complaint states a

claim against Morrison under 42 U.S.C. § 1983.

In order to state a cognizable claim under § 1983, the plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who deprived him of the right was acting under color of state law. *West v. Atkins,* 487 U.S. 42 (1988); *Parratt v. Taylor,* 451 U.S. 527, 535 (1981).

**\*2** Action under color of state law is conduct which is "fairly attributable to the state." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). Action may be attributed to the state if the following tests are satisfied:

First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible ... Second, the party charged with the deprivation must be a person who may be fairly said to be a state actor. This may be because he is a state official or because he he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.* Most often, § 1983 liability attaches to "a public employee ... acting in his official capacity or ... exercising his responsibilities pursuant to state law." *West,* 487 U.S. at 50.

Dr. Morrison argues that he cannot be sued under § 1983 because he was not employed by the City of Reading, but, rather, acted as an independent contractor. This argument is groundless. Private contractors can be found liable under § 1983. As the Supreme Court has stated:

It is the [individual's] function within the state system, not the terms of his employment, which determines whether his actions can fairly be attributed to the State.

*West,* 487 U.S. at 55-56. If the rule were otherwise,

the state [would] be free to contract out all services which it is constitutionally obligated to provide and leave its citizens with no means for vindication of those rights, whose protection has been delegated to 'private' actors, when they have been denied.

*Id.* at 56 n. 14 (quoting *West v. Atkins,* 815 F.2d 993, 998 (4th Cir.1987) (Winter, J., dissenting)).

A private contractor's conduct is subject to the same analysis applied to the conduct of any other private party to determine whether state action is present. Where the defendant is a private party, "the question is whether his conduct has sufficiently received the imprimatur of the State so as to make it 'state' action for purposes of the Fourteenth Amendment." *Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982).

There are a number of possible approaches for demonstrating that a private party's conduct is state action. First,

the complaining party must show that "there is a sufficiently close nexus between the State and the challenged action of the [private party] so that the actions of the latter may be fairly treated as that of the state itself."

*Id.* (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974)). Second, a state may be liable for a private decision "when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must be deemed to be that of the state." *Blum,* 457 U.S. at 1004.

Finally, state action may be found where a private entity has exercised powers that are "traditionally within the exclusive prerogative of the State." *Blum,* 457 U.S. at 1005 (quoting *Jackson,* 419 U.S. at 353); *see also Flagg Bros., Inc. v. Brooks,* 436 U.S. 149 (1978); *Robison v. Canterbury Village, Inc.,* 848 F.2d 424, 428 (3d Cir.1988). [FN3]

**\*3** When Morrison's conduct is subjected to this analysis, it becomes apparent that he may be considered a state actor for some purposes. The state may be said to have "encouraged" Morrison's conduct since, presumably, police department officials directed that Powers be examined by him. [FN4] Moreover, Morrison may have acted under color of state law to the extent that he performed a function which is traditionally that of the state.

Courts have found private health care professionals liable under § 1983 under both the "nexus" and the "public function theories. For example, in *Baltz v. County of Will,* 609 F.Supp. 992 (N.D.Ill.1985), the court found that a private psychiatrist acted under color of state law when he forced the plaintiff, a deputy sheriff, to undergo psychological testing.

The complaint specifically alleges that Dr. Hilger was hired by the Sheriff to perform psychological testing; that on the night of the arrest he was acting under orders of the Sheriff; that he ordered the deputies, who were in uniform, to search the house and to arrest Baltz; and that, again with the knowledge and approval of the Sheriff, he gave Baltz the "choice" of remaining in the County jail or moving to the hospital. These facts clearly show that the "state," via the Sheriff, placed its "imprimatur" on Dr. Hilger's acts.

*Id*. at 997-98. The court relied on what it termed the "nexus" approach, *see id*. at 997, but noted that state action might also be found under a "public function" analysis, *see* id. at 998 n. 11.

In *West v. Atkins,* 487 U.S. 42 (1988), the Supreme Court found that a private physician under contract with the state to provide medical services to inmates at state prison hospital acted under color of state law. The Court utilized a public function analysis. According to the Court, the state had a constitutional obligation to provide adequate medical care to prisoners. In order to fulfill this obligation:

North Carolina employs physicians, such as respondent, and defers to their professional judgment ... By virtue of this relationship, effected by state law, Doctor Atkins is authorized and obligated to treat prison inmates, such as West.

487 U.S. at 56. Therefore, in treating inmates, Dr. Atkins was "clothed with the authority of state law." *Id*. (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)).

This "functional" state action analysis was applied to a situation factually similar to the one at hand in *Schaeffer v. Wilcock,* 676 F.Supp. 1092 (D.Utah 1987). In that case, a state-paid social worker had performed a psychological evaluation of an individual and had found him qualified to become a state highway patrol trooper. The social worker was sued under § 1983 by a female motorist who was stopped and sexually assaulted by the trooper. The social worker argued that he could not be sued under § 1983 because he was not a state actor.

However, the court found that implementing and operating a police department was a traditional state function. Therefore, the social worker could be considered a state actor with respect to his conduct in fulfillment of that function:

**\*4** The qualifying and hiring of police officers is an integral part of this traditional state function.... State delegation of a traditional state function to a private party makes that party's action state action.

*Id*. at 1110. Hence, the social worker was subject to suit under § 1983 for gross negligence or deliberate indifference in the performance of that duty.

Thus, at this stage in the proceedings, it cannot be said that Dr. Morrison did not act under color of state law for *some* purposes. [FN5] As I stated earlier, Dr. Morrison may have acted under color of state law to the extent that he followed the orders of municipal officials or performed a traditionally municipal function. If Morrison acted with the imprimatur of the state when he examined Powers, then Powers might have a § 1983 claim against Morrison if his constitutional rights were infringed by the examination. If the psychological screening of police officers is a traditional state function, then a claim that Dr. Morrison was grossly negligent in screening Powers for his return to active duty might be cognizable under § 1983. [FN6]

However, a person can be a state actor for one purpose, but not another. As the Court of Appeals has stated:

The logical determinant must be whether the actions challenged as unconstitutional are performed in the exercise of the actor's governmental or public function, rather than in the actor's private capacity.

*Robison,* 848 F.2d at 429. The plaintiff seeks to ground § 1983 liability on Morrison's alleged failure to warn Fisher of the danger posed to her by Powers. There is no claim that Morrison had an *official* duty to do anything with respect to Powers but examine him and give a report about him to the Reading police department. Thus, when Morrison made the decision to take no action in warning Fisher, he did so as a purely private party. His failure to warn her is in no way attributable to the state; therefore, it is not actionable under § 1983.

Courts have recognized this distinction in cases similar to the one at hand. For example, in *Taylor v. List,* 880 F.2d 1040 (9th Cir.1989), the court ruled that a prison psychiatrist could not be sued under § 1983 for his refusal to testify on behalf of an inmate in the inmate's murder prosecution. Although the prison psychiatrist was certainly a state

employee, and had encountered the plaintiff in the course of performing his official duties, he did not act under color of state law for these purposes:

Taylor did not set forth any facts which showed that Freeman was under an official obligation to give expert testimony on Taylor's behalf. Thus, Freemen was not acting under color of his authority as a prison employee when he made the decision not to testify.

*Id.* at 1048.

Similarly, in *Myers v. Morris,* 810 F.2d 1437, 1465-67 (8th Cir.1987), the Court of Appeals upheld a grant of summary judgment in favor of court-appointed psychologists and social workers, who had examined suspected victims of child abuse, in a civil rights action by the accused. The court stated that, to the extent the defendants performed a quasi-judicial function, they were absolutely immune from suit. With respect to other conduct, they did not act under color of state law:

*5 We are less certain whether the absolute immunity which shields these professionals for their role in questioning children extends to reporting the results of their inquiries to law enforcement personnel. However, if the reporting conduct was beyond the scope of the official duties which the guardians, therapists, and attorney were appointed to perform and was undertaken on their own initiative as private persons reporting suspected crimes, then we do not consider the conduct action under color of state law.

*Id.* at 1467.

Dr. Morrison may have had a duty to warn Fisher if he believed that Powers posed a danger to her. Many courts have recognized a cause of action for negligence against psychiatrists who fail to inform third parties of the likelihood of violence by patients. *See, e.g., Jablonski v. United States,* 712 F.2d 391 (9th Cir.1983); *Leedy v. Hartnett,* 510 F.Supp. 1125 (M.D.Pa.1981), *aff'd,* 676 F.2d 686 (3d Cir.1982); *Peck v. Counseling Serv.,* 146 Vt. 61, 499 A.2d 422 (1985); *McIntosh v. Milano,* 168 N.J.Super. 466, 403 A.2d 500 (1979); *Tarasoff v. Regents of the Univ. of Cal.,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976). However, this duty is the product of state law. It is a duty which attaches to Morrison as a private person, not as a state actor. If Morrison breached this duty, the breach is not transformed into a "constitutional tort," actionable under § 1983, just because Morrison examined Powers at the behest of the Reading Police Department.

The plaintiffs may have a claim under § 1983 against the City of Reading and its Chief of Police. Although the Supreme Court's holding in *DeShaney v. Winnebago Dep't of Social Servs.,* 109 S.Ct. 998 (1989), has significantly narrowed the circumstances under which a municipality or its officials may be held liable for the harmful acts of third parties, the plaintiffs *may* be able to show that, in this case, "special circumstances" exist which make such liability appropriate. *See, e.g., Horton v. Flenory,* 889 F.2d 454 (3d Cir.1989) (state action where police officer allowed private club owner to conduct custodial interrogation); *Sherrell v. City of Longview,* 683 F.Supp. 1108 (E.D.Tex.1987) (Justice, C.J.) (abused child stated a claim under § 1983 where he alleged that police department was lenient toward police officers accused of domestic violence). This question is not yet before me. [FN7]

Therefore, I will grant the defendant Morrison's motion to dismiss the federal claims against him pursuant to Fed.R.Civ.P. 12(b)(6). I will not reach the merits of the state law claims, but will dismiss them for lack of federal subject matter jurisdiction. I note that, pursuant to Pennsylvania statute, 42 Pa. Cons.Stat.Ann. § 5103(b) (Purdon Supp.1989), the plaintiffs may transfer their claims against Morrison to state court following dismissal. *Greenfield v. Heublein, Inc.,* 742 F.2d 751, 760 (3d Cir.1984); *Rousseau v. City of Philadelphia,* 589 F.Supp. 961, 974 (1984). An order follows.

ORDER

*6 AND NOW, this 2 day of April, 1990, IT IS ORDERED as follows:

1. Defendant Donald Morrison's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) is GRANTED with respect to all federal claims against him, alleged in Counts Two and Three of the complaint.

2. All state claims against defendant Morrison, alleged in Counts Four, Five, and Six of the complaint, are DISMISSED for lack of federal subject matter jurisdiction.

3. Defendant Morrison is DISMISSED as a party to

this civil action.

FN1. Count Three of the Complaint is also alleged against Morrison. However, there the plaintiffs state only that the City and Steffey breached their duty to control and prevent the unlawful behavior of Powers. There is no reference to any duty owed by Morrison to control the behavior of Fisher.

FN2. The general rule in this circuit prevents me from retaining jurisdiction over the state claims once the federal claims are dismissed. *See Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 196 (3d Cir.1976) (when federal claims are dismissed, a district court should "ordinarily refrain from exercising jurisdiction [over the state law claims] in the absence of extraordinary circumstances."); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966). Moreover, if there is no independent ground of federal jurisdiction against Morrison, this court will not retain jurisdiction over the state claim against him, even though federal claims may remain against the other defendants. The Court of Appeals has expressed the view that pendent party jurisdiction, if it exists at all, is not to be expansively exercised. *See Lovell Mfg. v. Export-Import Bank of the United States,* 843 F.2d 725, 731 (3d Cir.1988); *Wilkes-Barre Publishing Co. v. Newspaper Guild,* 647 F.2d 372, 376 (3d Cir.1981). In addition, a recent Supreme Court case has been read as putting an end to pendent party jurisdiction altogether. *See Finley v. United States,* 109 S.Ct. 2003, 2010 (1989) (Federal Tort Claims Act case; "[A] grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties"); *Staffer v. Bouchard Transp. Co.,* 878 F.2d 638, 645 n. 5 (2d Cir.1989); *Birkinsaw v. Armstrong World Indus.,* 715 F.Supp. 126, 127 (E.D.Pa.1989); C. Wright, A. Miller, & E. Cooper, 13B Federal Practice and Procedure § 3567.2 (Supp.1990).

FN3. The Court of Appeals has recognized the "symbiotic relationship" test, the "nexus" test, the "public function" test, and the "state compulsion" test. *See Kulick v. Pocono Downs Racing Ass'n, Inc.,* 816 F.2d 895, 896 (3d Cir.1987); *Krynicky v. University of Pittsburgh,* 742 F.2d 94 & 98 n. 4 (3d Cir.1984). State action is also found where a private defendant is found to have conspired with state officials to deprive the plaintiff of constitutional rights. *Tower v. Glover,* 467 U.S. 914 (1984); *Dennis v. Sparks,* 449 U.S. 24, 27-28 (1980).

FN4. There is no allegation, however, that Morrison conspired with municipal officials to deprive the plaintiffs of their constitutional rights.

FN5. Nor, obviously, does the court rule finally that Dr. Morrison *was* a state actor.

FN6. The complaint contains neither of these claims.

FN7. It is unlikely that the plaintiffs can sue defendant Powers under § 1983. Although Powers was a police officer at the time the shooting occurred, it is most likely that his act will be found to constitute private conduct. *See, e.g., Bonsignore v. City of New York,* 683 F.2d 635, 638 (2d Cir.1982) (off duty police officer who shot his wife "in the ambit of [his] personal pursuits rather than "in the performance of any actual or pretended duty" did not act under color of law); *Delcambre v. Delcambre,* 635 F.2d 407, 408 (5th Cir.1981) (on-duty local police officer assaulted his sister-in-law on police premises; no state action because incident was family altercation); *see also Motes v. Myers,* 810 F.2d 1055, 1059 (11th Cir.1987). This question, however, is also not yet before me.

Not Reported in F.Supp., 1990 WL 39872 (E.D.Pa.)

Motions, Pleadings and Filings (Back to top)

. 2:89cv08148 (Docket) (Nov. 15, 1989)

END OF DOCUMENT